EDWARD D. BRISCOE, JR. *v.* NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.

5-5143                                                   451 S. W. 2d 205

Opinion delivered March 9, 1970

*Smith, Williams, Friday & Bowen;* By: *George Pike, Jr.,* for appellant.

*Teague, Bramhall & Davis,* for appellee.

J. FRED JONES, Justice. Edward D. Briscoe, Jr. sued National Union Fire Insurance Company of Pittsburgh, Pennsylvania in the Pulaski County Circuit to recover on a fire loss insurance policy issued to Briscoe by National. The court found that Briscoe had no insurable interest in the property at the time of the fire and had sustained no loss under the policy. Judgment was ren-

dered for National and on appeal to this court Briscoe relies on the following point:

"Mr. Briscoe had an insurable interest in the property at the time of the fire."

The record reveals that on November 30, 1967, Mr. Briscoe was working for the Guardian Company, a local real estate and loan corporation, as loan officer and appraiser. A Mr. Stigall was also employed by the Guardian Company as a real estate agent or salesman. Mr. O'Quinn had listed his apartment building with the Guardian Company for sale and most of his dealings with Guardian were through Stigall. On November 30, 1967, Mr. Briscoe made an offer, through the Guardian Company, to purchase the O'Quinn property for $25,000. The pertinent sections, 2, 3 and 9 of the written offer are as follows:

"2. The Buyer will pay $25,000.00 for the property, $12,000.00 in cash and the balance of $13,000.00 as follows: 2nd mortgage loan of a 15 years duration with interest rate of 6½% per annum and with payments of $113.25 per month, with the Buyer having option to pay the said 2nd mortgage in advance of maturity date without a penalty; subject to the Buyer obtaining a 1st mortgage loan on the subject property.

3. Special conditions: Subject to the Buyer giving the Seller a 1st mortgage loan of $25,000.00 with interest rate of 6½% per annum, with payments of $400.00 per month to suffice security to the Seller until the Buyer has had a reasonable time to secure the aforesaid 1st morgage loan, *with a maximum time limit for the Buyer to obtain the 1st mtg. loan not to exceed 45 days from the date of the said $25,000.00 1st mortgage loan;* also subject to in *the event the Buyer cannot obtain the $12,000.00 cash item mentioned in paragraph No. 2 of this offer and acceptance by or before the said 45 days limit aforesaid mentioned, the Buyer will deed the subject property back to the Seller* without a foreclosure suit in court or cause the Seller any legal action whatsoever to reclaim the subject property.

9. Buyer certifies that he has inspected the property and he is not relying upon any warranties, representations or statements of the Agent or Seller as to age or physical condition of improvements. *The risk of loss or damage to the property by fire or other casualty occurring up to the time of transfer* of title *on the closing date* is assumed by Seller." (Emphasis supplied).

This offer was accepted by O'Quinn on December 1, 1967, and on December 2, 1967, O'Quinn executed a warranty deed transferring title in the property to Briscoe. Both Briscoe and O'Quinn testified that Briscoe executed a mortgage to O'Quinn for the full agreed purchase price of $25,000, but that mortgage was misplaced and never recorded. The deed to Briscoe was filed for record on December 8, 1967. Briscoe and O'Quinn agree that Briscoe never did actually own any interest in the property except an option to purchase as set out in the offer and acceptance. They both agree that Briscoe took the naked legal title under the warranty deed as a mere convenience and for the sole purpose of attempting to obtain a loan of $12,000 with which to pay the agreed down payment on the purchase price of the property.

On December 27, 1967, Briscoe obtained a fire insurance policy in the amount of $20,000 on the apartment building involved in this case, and the policy contained memorandum information as follows:

"[The Company has insured Briscoe] . . . to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest

of the insured, against all DIRECT LOSS BY FIRE..."

The policy provided options available to National in the settlement of any loss, as follows:

"It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required."

Mr. O'Quinn carried his own fire insurance on the property under a policy issued to him by a different company. On February 7, 1968, the apartment building was damaged by fire in the stipulated amount of $4,-306.65. Mr. O'Quinn repaired the damage and was paid the full amount of the cost of repairs by his own insurance company. Mr. Briscoe filed claim against National for the amount of the fire damage. The claim was denied by National and Briscoe sued for $4,306.65 damage; for statutory penalty, attorney's fees and court cost. In rendering judgment for National, the trial court found as follows:

"The Court concludes that Mr. Briscoe had no insurable interest in the property as of the date of the fire; that his option to purchase same had expired and that Mr. O'Quinn's letter written subsequently can only be treated as a new offer which was not accepted by Mr. Briscoe. It is further found that Mr. Briscoe really suffered no financial loss in this transaction and that as of the time of the loss, he had no exposure."

National contends that Mr. Briscoe only had a 45 day option to purchase the property from O'Quinn; that the option had expired at the time of the fire and

that Briscoe's insurable interest, if he ever had any, expired with the option.

Briscoe contends that he was unable to obtain a loan on the property within the limited period of 45 days because an old mortgage, which had been paid but never satisfied of record, constituted a cloud on title requiring additional time for clearing. Briscoe contended that this time was extended, or its limitation waived, by letter from O'Quinn dated January 22, as follows:

"While waiting to get a reply from you in regard to the wall furnace that went out beyond repair at 823, West 45th. St. and broken down stuidio couchses [sic] at 4504 and 4508, Marion St. all in North Little Rock, Ark. through Mr. O. R. Stigall, which seemed all too long, our very good renter at 823, West 45th. St. moved out on this account. Most likely the others would have moved. We placed orders for the above items and called Mr. Stigall and reported on them.

Mr. Stigall then told us that you had returned from your trip and had aproved [sic] of the furnace but hoped we could repair the couches. We found out that the couches were beyond repairs before we called Mr. Stigall the first time. All the above items mentioned above were reported to me after our offer and your acceptance and we will expect remittance to us in the amount of Two Hundred Twenty Six & No/100 Dollars $226.00, plus any future major repairs that may come up before the deal is completed.

When the final papers are drawn up I want to use Mr. Homer Tanner to draew-up [sic] my part. If you want to use Beach Abstract on yours that is O. K. I would still want Mr. Tanner to examine and aprove [sic] them. Or if you wish we can both use Mr. Tanner and split the cost. I'm hopeful it can be all completed soon. I regret this delay is caused by this clearance at the Courthouse is take-

ing [sic] so much time but I believe it is well on the way now since the conference at Mr. Tanner's office late Friday P.M.

In regard to your loan, I am hopeful you will be able to borrow Fifteen or Sixteen Thousand Dollars instead of Twelve Thousand Dollars on the property for your down payment. If you borrow over Twelve Thousand Dollars I will expect to get it as the down payment thereby reducing your Mortgage by the amount over and above the Twelve Thousand Dollars.

I will report any news I get on the release at the Court House to you or Mr. Stigall in case you are out of town."

National points out that the 45 days had expired when this letter was written and contends that at most, the letter amounted to no more than a new offer which was never accepted. In any event, on February 14, 1968, Mr. O'Quinn wrote to Briscoe as follows:

"Your maxemum [sic] time for buyer to obtane [sic] first mortgage loan, 45, days according offer and acceptance on Lots 11 & 12, Block 6, Holeads Addition to the CITY of North Little Rock, Arkansas has expired, therefor I am requesting you to deed the property back to me according to the agreement as stated in the offer and acceptance.

Your compliance with this reuest [sic] at once will be appreciat [sic] and will close the deal between us."

Although we are of the opinion that the trial court's finding as to lack of insurable interest was sustained by substantial evidence, we shall not weigh and discuss in detail the evidence offered pro and con as to insurable interest at the time of fire, for we conclude that the judgment must be affirmed because Mr. Briscoe suffered no damage or loss because of the fire.

Under Briscoe's agreement with O'Quinn the risk of loss or damage to the property by fire or other casualty occurring up to the time of transfer of title on the closing date, was assumed by O'Quinn. Briscoe's policy was limited to the "amount which it would cost to repair the property with material of like kind and quality . . . nor in any event for more than the interest of the insured." Mr. Briscoe testified that he made some effort, without success, to obtain a loan of $12,000 on the property from Commonwealth Federal Savings & Loan Association. He testified that he never did obtain a commitment for a loan, and never did request one, because he had discovered in his chain of title the old mortgage on the property which had been paid but never satisfied of record. We are not impressed with Briscoe's contention that such unsatisfied mortgage record constituted such cloud on the title as to have prevented Briscoe from obtaining at least a commitment for the loan of $12,000 on this property if he really intended to borrow only $12,000 on the property within his option period of 45 days. Mr. Briscoe was bound to have known of the 45 day limitation on procuring a loan. He had a deed to the property and although the offer and acceptance recites $100 check as earnest money, and although the deed recites $10 cash and other good and valuable consideration, there is no evidence that Briscoe was ever out anything in connection with the matter. There is no evidence of an attempt to extend the option time before its expiration and Briscoe testified that he was out nothing except the premium he paid on the insurance policy.

There is no question that under the terms of the insurance contract, as between Briscoe and National, it was contemplated that Briscoe was the actual and sole owner of the property. Briscoe testified that he must have told Mr. Gazette (the insurance agent) that he was the sole owner of the property. Mr. Briscoe did not own the property at all when he applied for and procured the insurance, he only had 45 days in which to borrow money with which to make a down payment in the purchase of the property.

As between Briscoe and National, an insurable interest in Briscoe conflicts with the options as to settlement reserved in favor of National, by the terms of the policy under the facts of this case. National could not have taken the property at its appraised value, regardless of the extent of damage, because O'Quinn actually owned the property. National could not have repaired, rebuilt or replaced the destroyed or damaged property with other materials of like kind and quality within a reasonable time, because O'Quinn owned this property and had already repaired the damage as was his duty under his agreement with Briscoe.

We are of the opinion that there is substantial evidence to support the trial court's finding that Briscoe had no insurable interest in this property at the time of loss, and certainly there is substantial evidence that Briscoe suffered no damage or loss because of the fire.

The judgment is affirmed.